**LEAPAGATELE KESI and SAVALIGA MASUNU LAUPUA, for themselves and on behalf of the LEAPAGATELE FAMILY of Nu'uuli, Plaintiffs**

**v.**

**SIAOSI NYEL, KATELINA NYEL, TUI MASEALII, and MATIVA MASEALII, Defendants**

High Court of American Samoa
Trial Division

LT No. 35-90

December 17, 1990

Before REES, Associate Justice, LOGOAI, Associate Judge, and MAILO, Associate Judge.

Counsel: For Plaintiffs, Gata E. Gurr
 For Defendants, Utu Singege R.M.

 Leapagatele Kesi is the senior matai of the Leapagatele family. In or around 1976 he moved to the United States, ostensibly for medical reasons. Either at this time or at some time thereafter Leapagatele designated his nephew, Savaliga Masunu Laupua, to handle family affairs in his absence. Leapagatele still spends most of his time in the United States but visits Samoa several times a year.

 Leapagatele has an older brother, Isumu. The two brothers do not get along. This longstanding disagreement appears to have been at least part of the reason for the designation of Masunu --- who is not a registered matai and who would have been in his twenties in 1976 --- as Leapagatele's local representative.

 Isumu, for his part, obviously resents the fact that his brother is the family matai. He was the only witness for the defendants at trial, and he responded to several questions about his apparent usurpation of the function of the matai by reference to his status as the elder brother.

 At some time between 1976 and 1978, Isumu invited defendants Siaosi and Katelina Nyel to come live on Leapagatele communal land. The Nyels are from Western Samoa; one or the other of them is evidently related to Isumu (and therefore also to Leapagatele Kesi) on his

mother's side. Neither of them, however, is a blood member of the Leapagatele family, and they do not have any traditional right to live on Leapagatele communal land. It appears that Isumu invited them without consulting Leapagatele; he justifies this on the ground that Leapagatele was in the United States and that he, Isumu, is the elder brother. In or around 1978 the Nyels cleared some land and built a house.

In the early 1980s Leapagatele Kesi noticed the Nyels on the land and ordered them to leave. They referred him to Isumu. Isumu denies that he and Leapagatele ever discussed the matter; Leapagatele says there were several meetings about it at the Office of Samoan Affairs during 1982 or 1983. In any event, the Nyels did not leave.

A year or two ago Isumu invited the second set of defendants, Tui and Mativa Masealii, onto the land. Like the Nyels, they are not blood members of the Leapagatele family. They also built a house. It appears that this was a "temporary" house which has been substantially improved since the recent hurricane.

After the hurricane, in addition to repairing their old houses, each of the two couples who are defendants in this action also secured government assistance to build an entirely new house on Leapagatele family land. These houses were built without the permission of Leapagatele; the building permits were signed by Isumu.

This action to evict the defendants and to enjoin further construction on family land was filed in June. A preliminary injunction against further construction of the unfinished houses was issued in July. It appears, however, that the defendants completed the houses despite the Court's order.

Isumu insists that the defendants have a right to stay on the land, notwithstanding the wishes of Leapagatele. He argues that they are connected to the family, although not blood members of it; that he, the elder brother of the matai, has invited them onto the land; and that they have rendered tautua to the family. This tautua has been rendered by providing goods, services, and money to Isumu, who then makes contributions to various traditional events on behalf of the family. Isumu has a matai title from his mother's family in Western Samoa; although this does not make him a matai of the Leapagatele family or of the Village of Nu'uuli, he did register the title with the office of the Territorial Registrar before the matai registry was closed in 1969. Isumu refuses to render tautua to the family through the untitled nephew as

directed by Leapagatele. Isumu says he has directed the defendants to render service to Leapagatele personally when Leapagatele is on island, but that such service has been refused.

Isumu's complaints about the extended absence of Leapagatele and the irregular way in which he has been handling family affairs during his absence might have been properly raised, and might still be raised, by way of a petition to remove the matai. *See* A.S.C.A. § 1.0412. Instead, Isumu decided to take the law into his own hands by setting up a sort of provisional government. He exercised authority properly belonging to the sa'o of the family with respect to land and traditional events, although he knew this was contrary to the wishes of the sa'o. He also illegally signed building permits in which he falsely represented himself as the "land owner."

We sympathize with the defendants, who have relied to their detriment on Isumu's representations that he has authority over this land. Such reliance was probably reasonable during the 1970s: Leapagatele was away, Isumu was his brother, and the defendants cannot be presumed to know about the disagreements within the family. At least since the early 1980s, however, the Nyel defendants were on notice that Isumu had been misrepresenting his authority over family land and that the person who really did have the authority wanted them out. The evidence further reflects that by the time the Maseali'i defendants arrived a year or two ago, the rupture between Leapagatele and Isumu was so open and of such long standing that anyone living in the family would have known about it. (For one thing, at recent traditional events there have been two separate presentations on behalf of the Leapagatele family: an "official" one offered by Leapagatele or his surrogate Masunu, and a "provisional" one offered by Isumu.)

We therefore find that the defendants have no traditional right to reside on Leapagatele land, have no permission to live there by anyone with authority to give such permission, and since the early 1980s cannot have reasonably believed that they had such permission. The request for eviction must therefore be granted.

A person who is evicted from land by the true owner, but who made improvements on the land in the good faith belief that he was the owner (or, as in this case, that the owner had authorized him to build the improvements) is entitled to compensation for the value of his improvements. The measure of compensation is the lesser of two amounts: (1) the actual cost of the improvements or (2) the amount by

which they have enhanced the value of the property. *See Roberts v. Sesepasara*, 8 A.S.R.2d 124 (1988), and authorities cited therein.

With respect to the one house that was built some years ago, the Nyel defendants are entitled to such compensation. Or, if they prefer, they are entitled to remove the house. The defendants are not entitled to compensation for the three houses that were built recently, when the defendants could not have believed in good faith that they had the permission of the landowner. They may either remove these houses or abandon them to Leapagatele.

Because removal of the houses is likely to be expensive and wasteful, it would be better for everyone if the two sides agreed on a fair price for all four houses and Leapagatele purchased them from the defendants. In case the parties cannot reach such an agreement, the defendants have sixty days in which to remove the three houses. If they do not, these houses will become the property of Leapagatele.

With respect to the Nyels' house for which they are entitled to compensation (the older of their two houses), both plaintiff and the Nyel defendants should submit to the Court within thirty days documentary evidence (affidavits, receipts, etc.) of (1) what it cost to build this house and (2) the amount by which it has enhanced the value of the property. Care should be taken to ensure that estimates of cost or value are reasonable; if one party submits evidence that is clearly unreasonable, the Court may accept the other party's evidence as conclusive. The Court may or may not order a further hearing after receiving this documentary evidence. (If the defendants would prefer to remove this house, they should so notify the Court.)

We note that the defendants may have a cause of action against Isumu for any losses they incur as a result of our decision in this case. We note further that defendants' counsel, although he may have been retained and paid by Isumu, has an obligation to represent the defendants and not Isumu. Counsel should advise the defendants about any rights they may have against Isumu.

The petition for eviction is granted. Defendants are ordered to remove themselves and their property from the land within sixty days.

It is so ordered.